Maria Echevarría de Subirá et al., Plaintiffs and Appellees, v. Rafael Saurí, Defendant and Appellant.

No. 4169. Argued May 23, 1928.—Decided July 28, 1928.

L. Yordán Dávila, R. Pérez Marchand and J. Tous Soto for the appellant. Henry G. Molina for the appellees.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The brief of the appellant begins as follows: "This is an injunction proceeding to recover material possession brought by the plaintiffs in a sworn complaint, in accordance with special Acts No. 43 of 1913 and No. 11 of 1917."

It is alleged in the complaint that the plaintiffs are the owners of the Isabel plantation and the defendant is the owner of the Santa Cruz plantation. The two properties are

contiguous, being separated at some places by the so-called municipal road of Bucaná and at others by lanes on which there are ditches used for irrigation purposes. Five different causes of action are asserted. It is alleged by the first that the defendant had dispossessed the plaintiffs of a certain parcel of land situated on the western boundary of the Isabel plantation with the Bucaná road; by the second that he had built a gate on the Bucaná road and thereby had deprived the plaintiffs of the use of that road; by the third that he had dispossessed the plaintiffs of another strip of land of twelve feet on the west front adjoining the Bucaná road, of twelve feet on the eastern side of the Isabel plantation and 1,156 feet in length adjoining on the north the Isabel plantation and on the south the Santa Cruz plantation and had disturbed them in the use of the ditch existing on that strip; by the fourth that he had removed the fence on the boundary line of the Isabel and Santa Cruz plantations and by the fifth that he had filled up the ditch existing on a lane more to the north of those places.

The prayer of the complaint is very elaborate. It prays for the adoption of specific measures in relation to each cause of action. Then it says:

"Moreover we pray the court to set a day for the trial of the present case in accordance with section 3 of Act No. 43 of March 13, 1913, governing proceedings to recover possession of real property, so that the setting be made during the fifteen days following the filing of this complaint, or not later than December 27, 1926, at 9 a. m."

On December 10, 1926, the day on which the complaint was filed, the district court ordered as follows:

"Considering the complaint in this case and the provisions of section 3 of Act No. 43 of March 13, 1913, the 20th of December, 1926, at 9 a. m. is set for the trial of the present case and the defendant should be summoned immediately to appear on that date."

In addition to the prayer as a consequence of the second cause of action that the defendant be ordered to remove the

gate built by him across the Bucaná road and abstain from obstructing the passage of the plaintiffs, their agents or employees along that road, a separate motion was made for an injunction *pendente lite,* acompanied by several affidavits, concluding as follows:

". . . . . and order the said defendant, Rafael Saurí, to appear before this court on the day and at the time set for the trial of the case and show cause why said restraining order should not be converted into an injunction *pendente lite* pending a decision on the merits of the case, that is, until final judgment is rendered."

On the same day, or December 10, 1926, the court issued the writ of injunction and set December 20, the day of the trial, for the date to show cause.

The parties appeared on December 20, 1926. The defendant presented a demurrer on the following grounds: That the plaintiffs had no legal capacity to sue; that there was misjoinder of actions; that the complaint was ambiguous and uncertain; that the third cause of action was unintelligible, and that the complaint did not state facts sufficient to constitute a cause of action.

It appears that the demurrer was amply argued by counsel for both parties and that the court sustained the second ground of demurrer. The attorney for the plaintiffs explained that the second cause of action had been drafted in accordance with the provisions of the law of 1906 under the theory that an injunction proceeding and a proceeding to recover possession could be joined, and the court set aside its ruling. When the court opened in the afternoon it reconsidered its ruling and overruled the demurrer. All of the other grounds of demurrer had been overruled in the morning session.

The defendant took exception to the ruling of the court and moved that it be converted into a final judgment, which was done. This appeal was taken from that judgment.

On the following day the defendant moved that that judgment be set aside and that he be allowed to answer. The

court overruled the motion and that ruling has been appealed from also.

There were other proceedings by reason of a motion of the defendant to be allowed to furnish security to cover any damages caused and to dissolve the injunction *pendente lite*. The court refused, but the security of a thousand dollars which had been furnished by the plaintiffs for obtaining the preliminary injunction was raised to ten thousand.

For a better understanding of what occurred and of the most important question involved it seems well to transcribe the following from the brief of the appellees:

"The complaint, as far as causes of action 1, 3, 4 and 5 are concerned, is very clear and did not require much study from the undersigned attorney who drafted it, because he followed literally the repeated jurisprudence of this Court regarding injunctions to recover or retain possession (Acts No. 43 of 1913 and No. 11 of 1917) and specially the doctrine laid down in Serrano v. Heirs of Santos, 24 P.R.R. 163, as follows:

"'When one of the adjoining owners failed to agree the other had no right to fix the boundary line himself, for no one may take the law in his own hands but must seek his remedy in the courts, "inasmuch as the courts are established so that men may obtain justice through them and not by their own acts." Law XIV, Title X, *Partida* VII.'

"Now, let us turn to the theory of the complaint especially in connection with the second cause of action. Here we met with a difficulty. The point which troubled us was as to the remedy or kind of action for immediately opening and then removing definitely the gate which closed the Bucana road. It was precisely the point which concerned most the plaintiffs for the moment for the reasons set forth in paragraphs 5, 6 and 7 of the second cause of action and for which reason they filed the petition for an injunction *pendente lite* to which we refer. It was a pressing matter for the plaintiffs to have the use of that road for transportation over it during the crop coming close after the filing of the complaint of the cane of the parcel called 'Salichs' to be weighed on the scales on the railroad track on the other side (towards the North) of the gate set up by the defendant across the Bucana road, just for the purpose of injuring and hindering the plaintiffs in the use of it by them as stated before, which use was not a nuisance to the defendant at all, just as

it had not been a nuisance to the former owners of the Santa Cruz plantation during all the years in which the plaintiffs had used it for the same purpose. We examined each and every decision of this Court bearing on the laws on injunctions to recover and retain possession (of 1913 and 1917) and made a digest thereof which we enclose herewith as forming part of this brief. The last but one decision published up to date (December, 1926), Central Victoria v. Hernández, 35 P.R.R. 561, might be construed by the district court, superficially, to the effect that the special action provided by said acts did not apply to an owner for retaining, or being protected in, the possession or use of a public highway adjoining his own property. Analyzing that decision, our opinion was and is that it had no bearing on a case like the one at bar, and that it referred rather to the particular facts of that case, namely, of a *private* road within the land of the defendant and which did not adjoin any property of the plaintiff. But here there is involved the property *of the plaintiffs* for whose use and enjoyment they have the right of ingress and egress over the public highway adjoining said property. Therefore, the alleged acts of the defendant disturb the plaintiffs in the possession and enjoyment of *their own property,* of which they were in full possession, besides being disturbed in the possession or use of the Bucaná road itself in connection with their property which adjoined the same. We will make at the proper time an analysis of the decision in Central Victoria v. Hernández, in order to show that that decision is not opposed to our contention.

"But in the event that the courts, and especially the district court, might not accept that theory, we drafted the averments of the second cause of action so that the same could be maintained under the Act on Ordinary Injunctions of 1906. See particularly the averment of paragraph 7 of the said cause of action. Of course, it occurred to us that the defendant would insist that that action (second cause of action on ordinary injunction) could not be joined to others on injunction to recover or retain possession, but the particular circumstances of the case at bar are such that it would be extremely difficult to draw the dividing line between the two actions. See what this Court said in Ferrer v. Gutiérrez, 28 P.R.R. 425:

" 'Commenting on this section (C. C. 448), we have had occasion heretofore to say that "this statutory provision and the history of the interdicts through which the principle thereof was applied under the former procedure should suffice in this jurisdiction to sanction, if not to accelerate, *the modern trend toward enlargement* rather than restriction of the class of cases in which equity will interfere to

prevent a threatened trespass.'' García v. Rodríguez, 27 P.R.R. 284.' (Italics ours).

''Both actions are of an equitable nature, that is, they are actions in equity. If the case went up to Boston, for instance, it would undoubtedly be on appeal and not on writ of error. It is a well-established doctrine that 'Equity delights to do justice and not by halves.' 21 C. J. 198, sec. 187, where it is said:

'' 'The principle of the maxim embraces the well-established doctrine that when equity once acquires jurisdiction it will retain it so as to afford complete relief.'

''Truthfully speaking, we did not think it necessary to plead separately the five causes of actions, because the present being an equitable action and the remedy sought being exclusively the equitable one of injunction (the laws of 1913 and 1917 specifically speak of injunction), we understand that it would have been sufficient to state all the facts and to pray the court for a single judgment or decree directing the defendant to remove the gate and discontinue disturbing the plaintiffs in their enjoyment of the property as they were doing on or before December 12, 1925. If we are right on this point, surely the complaint is not defective for having set forth in five different causes of action each connected with a certain part of the boundary line the violent and illegal acts of the defendant which gave rise to the complaint.

''As to the second cause of action, we repeat that the facts with which it deals are absolutely identical with the facts involved in the first cause of action, because part of the gate obstructing the Bucana road is on ground of the plaintiffs forming the base of the parcel of land in the shape of a triangle described in the first cause of action.''

The first and second grounds of demurrer were worded as follows:

''1. That in the case at bar the plaintiffs lack legal capacity to bring an action for opening a road alleged to be a municipal road, because, if the facts are admitted, such action would be incumbent on the collective body, the municipality of Ponce, since it is based on the alleged public servitude, and the remedy can not be that of the injunction prescribed in Act No. 43 of 1913 as amended by Act No. 11 of 1917 which is to be exercised by private persons in the prosecution of said action.

''2. That there is a misjoinder of actions in the present case, because the plaintiffs seek to be reinstated in the possession of a parcel

of land which they describe in their first cause of action pursuant to the provisions of the Acts of 1913 and 1917 on injunction, and they describe the facts constituting the disturbance by means of averments which are proper in an action to be prosecuted in any case by the collectivity, the municipality of Ponce, for the opening of the so-called Bucana road as a municipal public servitude.''

Were it not for the statements of the attorney for the plaintiffs at the hearing to which we have referred, the question of whether or not the Injunctions Act of 1906 was involved in the case would not arise from the foregoing demurrer.

If it should be attempted to maintain that it was possible within a single action to include at the same time a special injunction proceeding to recover or retain possession under the Acts of 1913 and 1917 and an ordinary injunction in accordance with the statute of 1906, we would have to hold that it could not be done, because the summary and special proceedings of the former can not be merged with the broad proceedings of the latter.

But this does not mean that when an injunction proceeding has been brought to recover or retain possession under the Acts of 1913 and 1917 an order in the nature of an injunction *pendente lite* can not be moved for and granted in aid of the court's jurisdiction.

This being so, the real question is whether or not the five causes of action set up in the complaint can be asserted in accordance with the said acts of 1913 and 1917.

In regard to four of them the answer is unquestionably in the affirmative. It is with regard to the second, which refers to the Bucaná road, that the controversy arises.

The defendant-appellant contends that the plaintiff-appellees have no personality to bring that action, which corresponds to the municipality of Ponce, and that an action to recover the possession of a public road could not be joined with others to recover the possession of private property.

We have quoted from the brief of the appellees and in

referring to the exact question at issue they continue as follows:

"This is absolutely a new and very peculiar question and we remind the Court that we are on the broad road of equity and, above all, that,

" 'Few tribunals are so unfettered by precedent, or, in matters not governed by statute, so free to follow the dictates of conscience and common sense as are the courts of this Island. To build, upon the fundamental principles so often found at bottom in both American and Spanish jurisprudence, a composite structure embodying the best elements of the two great systems and, in so far as may be, unmarred by the defects of either, is our peculiar privilege if we will but grasp the opportunity that lies before us.' Vega Baja v. Smith, 27 P.R.R. 582."

At a new hearing, insisting on their theory, they cited as jurisprudence two judgments of the Supreme Court of Spain and made several quotations from the volume of Ruling Case Law referring to roads.

The first judgment of the Supreme Court of Spain cited is that of December 31, 1879, appearing in 42 *J. C.* 523. It was a case of an injunction to recover. Manuel Venero alleged that he had been in uninterrupted possession for at least 35 years of a right of way leading from his home to the main road across the property of one Fernández and that the latter dispossessed him of that right of way by having a ditch dug and committing other acts, and prayed for protection in his right. The courts gave him relief and Fernández took the matter to the Supreme Court, assigning as error the violation of section 724 of the Code of Civil Procedure in that an injunction had been allowed as the proper remedy which did not comply with the first requisite prescribed in that section, as an injunction is granted only against the dispossessor of things and not of rights, and it was held by the Supreme Court:

"That under the name of possession is included *quasi* possession for the purpose of injunctions to recover wherein a question of public policy is settled since one is similarly affected by being deprived of

a corporeal thing in his possession as well as of a right of way of which he is the possessor or *quasi* possessor.''

In the second decision, that of July 11, 1881, 47 *J. C.* 100, ratifying the foregoing doctrine, it was held:

''That in conformity with the constant jurisprudence of the Supreme Court based on Law I, Tit. III, *Partida* III, and other laws, the injunction to recover lies wherever one is dispossessed of real property or of the exercise of a right; because, as in this kind of a proceeding very summary questions of public policy are determined, one is similarly affected by being violently or fraudulently dispossessed of a corporeal thing which he possessed as of a right of which he was the *quasi* possessor.''

The citations from Ruling Case Law are for the purpose of showing the rights held by all persons to the use and enjoyment of the public roads and especially by abutting property owners. 13 R.C.L. 138, 139, 142 and 231.

The force of the argument of the appellees and of the jurisprudence cited must be recognized.

All precedents tend to show that the ancient interdicts, now injunctions to retain or recover possession, involve a question of public policy requiring a prompt decision which does not prejudge the definite rights, but fix the present condition so as to protect the enjoyment of that which is possessed and had been possessed within the short period of one year.

Admitting, as we must, the truth of the facts alleged in the complaint, it appears that the right to the possession of the other strips of land referred to therein is so intimately connected with the right to the *quasi* possession of the so-called municipal road of Bucaná that the reestablishment of the state of things sought can not be secured without including the road within the action. Part of the gate built across the road is on land alleged to be in the possession of the plaintiffs. And if the obstruction proceeded from the defendant and no question of title is to be finally settled, why can not the whole matter be settled within the summary pro-

ceeding to recover the possession? With or without right it is a fact that the plaintiffs allege that they were in the *quasi* possession of the road and that the defendant deprived them of that *quasi* possession. We do not see that the intervention of the municipality, the owner of the road, is necessary for a determination of the question of possession which only arose between the parties.

It is true that the servitude which originated the first judgment of the Supreme Court of Spain cited was within private property, but it was a right of way and the disturbance on the part of the defendant in such a case and in this case is identical and therefore the same rule may be applied. Whether the road was the property of the municipality or of the defendant, it is a fact that the plaintiffs allege that they were in the *quasi* possession of it, using it for travel and for the transportation of the products of their property, and that the defendant closed it by building the gate, and as they pray for protection in their possession or *quasi* possession, they should receive it from the court by availing themselves of the summary proceeding of injunction authorized by the Acts of 1913 and 1917.

The three other grounds of demurrer have no merit. The complaint is not ambiguous nor unintelligible and states sufficient facts. The questions involved are clearly raised. The evidence in regard to them was weighed before rendering the elaborate decision which is proper in such cases and it is sufficient to examine it to reach the conclusion that the complaint supplied the necessary grounds for a final decision without difficulty.

There remains to be considered whether or not the district court should have set aside the judgment on the motion of the defendant in order to allow him to file the answer.

In the motion by the defendant to that effect it was alleged as follows:

"That yesterday, December 10, 1926, this case was heard and on

motion of the defendant an adverse judgment was entered on the demurrer, the only pleading filed by the defendant.

"That such judgment has not yet been notified to the defendant or his attorneys; but the defendant is already complying with the terms of the injunction or restraining order of this court in the premises.

"That the weighty reason which prompted the attorneys of the defendant to move in his name and representation that the ruling on the demurrer be made a final judgment was to give the parties a wide and easy opportunity for a possible understanding to put an end to the painful situation created by the litigation, without entering into particulars regarding the evidence which might injure and vex the litigants beyond the point already reached. Instructions were given to that end to the undersigned attorneys of the defendant for the sake of harmony and for the sole purpose of paving the way for a compromise which was being negotiated by the parties and which even just before going to trial was being discussed by the parties and their friends.

"That such compromise has not been effected and the undersigned attorneys consider it to be their highest duty and the unavoidable mandate of professional ethics to appear before this Court and for the sake of justice and the sacred interests intrusted to them for their defense to pray the District Court of Ponce to allow the attorneys of the defendant to file in his name and representation an answer to each and every cause of action and pleading of the complaint, since the judgment which was expected and rendered on the demurrer had not been yet properly notified to the defendant nor has it been attached to the record or become final."

Saturday, January 3, 1927, was set for a hearing on the motion, both parties appeared and after the matter was fully argued the court overruled the motion.

The court held that as a question of law the judgment was final and it had no discretion to set it aside, cited the cases of *American Railroad Co.* v. *Quiñones,* 17 P.R.R. 247, and *Pescay* v. *Fernández,* 28 P.R.R. 741, and added:

"So that the court is of the opinion that in accordance with the above jurisprudence, as a matter of law, it has no discretion under section 140 nor is the defendant entitled, in view of his attitude, to have the case re-opened after he had failed to answer and had moved for a judgment on the demurrer; and considering, moreover, that

this is a case of injunction under the special Act No. 43 of 1913 as amended by the Act No. 11 of 1917 specially providing that the case shall be heard within fifteen days and likewise that all motions or demurrers shall be filed and heard at the time of said hearing; it is a very summary proceeding established by statute, so that this renders still stronger the position of the plaintiffs when setting up an opposition to the motion of the defendant; the defendant had an opportunity to answer, he ought even to have answered on the day of the hearing, at the same time filing his demurrer, and the Supreme Court says that such judgment is final and conclusive, that no legal discretion lies under section 140, and if any legal discretion existed, in the other and more generic sense, as regards the option of the court to exercise its discretion in particular cases, the court thinks that in the present case, considering the developments thereof, it ought not to exercise it.''

Leaving aside the important question of whether or not the order of the court was appealable or whether or not it can be considered on an appeal from the judgment, and without attempting to decide whether or not the jurisprudence cited deprives the court of its discretion to weigh the facts and in a truly proper case set the judgment aside, we are of the opinion that the motion of the defendant-appellant sets up no good cause for the exercise of the discretion.

It is inconceivable that what is said to have occurred did occur. If the state of their minds was as has been intimated, it would have been logical for both parties to have moved for a postponement of the trial after the demurrer had been ruled on.

The transcript of the record is sufficient to show the spite existing between the parties, which is reflected in the attitude of the attorneys in the different incidents which arose. The trial court, which was in the best position to observe the situation, must have felt more strongly the peculiarity of the cause alleged.

The defendant became bound by his own acts. The plaintiffs were ready with their witnesses before the court to submit the proof of their averments. The defendant preferred to come to the Supreme Court to submit his case on ques-

tions of law. He knew that his attitude involved the admission as true of the facts alleged in the complaint and can not complain. He had his day in court. He chose his road. All of the questions raised by him have been considered and decided.

The judgment and the order appealed from must be affirmed.

Mr. Justice Hutchison concurs in the judgment and also in the opinion except where it is held that there can be no joinder in a single action of an injunction proceeding to recover possession under the Acts of 1913 and 1917 and an ordinary injunction proceeding under the Act of 1906.